CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED
JAN - 3 2006
JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| RONALD CLIFFORD JOHNSON,<br>Plaintiff, | Civil Action No. 7:04CV00050 |
| v. | **MEMORANDUM OPINION** |
| CLARKE FAUQUIER FREDERICK<br>WINCHESTER REGIONAL ADULT<br>DETENTION CENTER, et als.,<br>Defendant. | By: Jackson L. Kiser<br>Senior United States District Judge |

Plaintiff Ronald Clifford Johnson, a Virginia inmate proceeding pro se, brings this action pursuant to 42 U.S.C. § 1983, with jurisdiction vested under 28 U.S.C. § 1343. In his complaint, plaintiff alleges that on February 13, 2002, prior to his release from the Clarke-Fauquier-Frederick-Winchester Adult Detention Center ("Jail"), he was assaulted by correctional officers and subsequently denied medical treatment. This matter is now before the court on defendants Alger, Dusing, and Jones' motion for summary judgment.[1] The court notified plaintiff of defendants' motion as required by Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) and advised plaintiff that his failure to respond to the defendants' motion may result in judgment being granted for the defendants. Plaintiff has filed a response to the defendants' motion, thus making the matter ripe for disposition.[2]

I.

Johnson alleges that on the morning of February 13, 2002, Defendants Kim McBride, Leon

---

[1] The court notes that although defendants Kim McBride and Leon DuJoun waived service, see docket entry numbers 47 and 48, they have yet to file any response to plaintiff's complaint.

[2] Plaintiff submitted multiple documents to the court which address issues raised in defendants' motion, but did not specifically reply to defendants' motion for summary judgment. However, as the time for him to file such a response has expired, I find that the motion is ripe for disposition.

de Joun, Correctional Officer Alger, and Correctional Officer Dusing removed him from his cell, restrained him with chains and shackles, and then assaulted him. He further claims that these defendants then pushed and/or dragged him down "nineteen steel steps." Thereafter, Johnson was transferred to the medical unit and examined by medical personnel who determined he did not need any further medical attention. Although unclear, sometime thereafter Johnson made a court appearance, all charges were dropped, and it was ordered he be released from the Jail. However, Johnson alleges that at the time of his release he was in such severe pain as a result of that morning's assault, he left the jail "crawl[ing]" and dragging his "multi-fractured" left leg and hip behind him. As he was leaving, Johnson claims he asked Defendant Booking and Correctional Officer Jones for help, but she refused to call for medical assistance.

It is undisputed that immediately following Johnson's release from the Jail he went to the Winchester Memorial Hospital, where he was diagnosed with a displaced left hip fracture and an emergency hemiarthroplasty replacement was performed. However, defendants contend that the events Johnson alleges to have caused the hip fracture never occurred. Instead, defendants aver that on the morning of February 13, 2002, correctional officers entered Johnson's cell to take him to court, but he was unresponsive. At approximately 4:00 a.m. Johnson was moved to the medical unit for treatment. Johnson's medical records indicate that at that time he was conscious, but generally incoherent. However, Johnson was fully coherent by, at the latest, 4:45 a.m. Upon becoming lucid Johnson stated he was unsure of what had happened, but did immediately complain of pain in his left leg. However, at that time the pain was attributed to a mere muscle strain.

Defendants assert that Johnson was never assaulted, and instead attribute his injury to a possible seizure while in his cell, prior to his transfer to the medical unit. In support of this

2

contention, defendants point to a history of prior seizures and the fact that during the hemiarthroplast replacement the doctor noted the injury may have occurred up to three weeks prior to the date of the surgery. Jones further contends that as she was not aware of the alleged assault, nor the fact that plaintiff had a broken bone, she could not have known he had a serious medical need which necessitated immediate treatment.[3]

## II.

Upon motion for summary judgment, the court must view the facts and the inferences to be drawn from those facts, in the light most favorable to the party opposing the motion. Ross v. Communications Satellite Corp., 759 F.2d 355 (4th Cir. 1985). Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). However, "[t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 47 U.S. 242 (1986).

When a motion for summary judgment is made and properly supported by affidavits, depositions, or answers to interrogatories, the adverse party may not rest on the mere allegations or denials of the adverse party's pleadings. Instead, the adverse party must respond by affidavits or otherwise and present specific facts showing that there is a genuine issue of disputed fact for trial. Fed. R. Civ. P. 56(e). If the adverse party fails to show a genuine issue of material fact, summary judgment, if appropriate, may be entered against the adverse party.

---

[3]Jones also contends that even if Johnson was assaulted, she was not on duty until 6:00 a.m. on the date of the alleged injury, so she could not have participated in the assault. However, the court need not address this assertion, as she has not been named by Johnson in his claim of excessive force.

3

## A.

Johnson claims that defendants Dusing and Alger violated his right to be free from cruel and unusual punishment by pushing and/or dragging him down nineteen steel steps on the morning of February 13, 2002. Defendants argue this incident never occurred, and that Johnson's broken hip was likely incurred during a "seizure" or some other incident occurring either that morning or at some other time during his confinement at the jail.

To establish an Eighth Amendment excessive force claim against a prison official, an inmate must satisfy a two-prong standard comprised of both an objective inquiry (whether the harm plaintiff suffered was sufficiently serious enough to amount to a constitutional violation) and a subjective inquiry (whether the defendant acted with a sufficiently culpable state of mind). Williams v. Benjamin, 77 F.3d 756, 761 (1996).

The subjective component of an excessive force claim requires an inmate to demonstrate that the force used by an institutional official, "inflicted unnecessary and wanton pain and suffering." Hudson v. McMillian, 503 U.S. 1, 7 (1992). In evaluating such a claim, "the question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" Id. (quoting Whitley v. Albers, 475 U.S. 312, 32-21 (1986)). The Supreme Court and the Fourth Circuit have set out the following factors to consider in determining whether a prison official acted maliciously and sadistically: "the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." Hudson, 503 U.S. at 7 (1992)

4

(quotations omitted); Williams, 77 F.3d at 762. Also, the inmate must prove the correction official's actions were "'objectively harmful enough' to offend 'contemporary standards of decency.'" Stanley v. Hejirika, 134 F.2d 629, 634 (4th Cir. 1998) (quoting Hudson, 503 U.S. at 8). Although there is no requirement that an inmate suffer "serious" or "significant" pain or injury to demonstrate that a malicious or sadistic use of force was employed, he must allege "more than a de minimis pain or injury." Norman v. Taylor, 25 F.3d 1259, 1263 n. 4 (4th Cir. 1994).[4]

According to Johnson, on the morning of February 13, 2002, Alger and Dusing shackled him then pushed and/or dragged him down nineteen steel steps, causing a fracture in his left hip. However, defendants assert the assault never occurred, and attribute Johnson's injury to a seizure sometime before he was transported to the medical unit that morning. In support of this argument defendants have produced Johnson's institutional medical record as well as his medical record from Winchester Memorial Hospital where the hip fracture was repaired.

Specifically, defendants contend that on the morning of February 13, 2002, correctional officers attempted to rouse Johnson for a "court call." Johnson was unresponsive and the officers

---

[4] "[A]bsent the most extraordinary circumstances, a plaintiff cannot prevail on an Eighth Amendment excessive force claim if his injury is de minimis." Taylor v. McDuffie, 155 F.3d 479, 483 (4th Cir. 1998). However, a de minimis physical injury may amount to an Eighth Amendment violation if the force used was of the sort "repugnant to the conscience of mankind." In Norman v. Taylor, the Fourth Circuit stated:

> We recognize that there may be highly unusual circumstances in which a particular application of force will cause relatively little, or perhaps no, enduring injury, but nonetheless will result in an impermissible infliction of pain. In these circumstances, we believe that either the force used will be "of a sort 'repugnant to the conscience of mankind,'" and thus expressly outside the de minimis force exception, or the pain itself will be such that it can properly be said to constitute more than de minimis injury.

25 F.3d at 1263, n. 4 (citations omitted).

5

transferred him to the medical unit. Johnson's medical record states that correctional officers brought Johnson conscious, but incoherent to the medical unit at approximately 4:00 a.m. that morning. Approximately 45 minutes later Johnson was lucid and began complaining of significant pain in his left leg. Although there is a notation in the record that the nurse speculated that the injury was merely a muscle strain, possibly incurred that morning, there is no indication as to what Johnson attributed the injury to. Additionally in support of their supposition that the alleged assault never occurred, defendants point to Johnson's statements to Dr. Audrea Wynn following his admission to the hospital on February 13, 2002 indicating that he had been treated unkindly by correctional officers, but not beaten. Defendants also cite Dr. Wynn's Operative Report, made after Johnson's emergency surgery, which described the fracture as a very "unusual injury" which may have been up to three weeks old.

Defendants contend that Johnson's injury was attributable to a seizure, yet they have failed to produce any evidence which supports this proposition. Although there is some evidence that Johnson had one seizure at least four years prior to February 13, 2002, there is nothing in his medical record which suggests that either institutional medical personnel or medical personnel at the Winchester Memorial Hospital believed he had a seizure on February 13, 2002. Furthermore, Dr. Wynn's patient history report specifically indicates that he believed the prior seizure was directly attributable to the abuse of alcohol at that time, but notes that Johnson no longer drinks nor has he been treated for seizures for a long time.

Further, although defendants point to Johnson's statements that he was not beaten by officers, they have not addressed other statements Johnson made during the intake exam at Winchester Memorial Hospital. Specifically, defendants have failed to provide any response to

6

Johnson's assertion that he was treated "unkindly" by officers, that he had been examined by an institutional nurse that morning specifically relating to his leg pain, nor that when he was taken to court a few hours later his leg had caused him such excruciating pain that he had to be carried and when forced to stand on that leg he nearly lost consciousness.

Next, defendants contend that Dr. Wynn's Operative Report indicates that in his opinion Johnson's fracture may have occurred some time prior to February 13, 2002. Although unclear, it appears that Dr. Wynn based his opinion that the injury may have been up to three weeks old on the fact that there was "liquified old blood" in the hip socket and the bone edges appeared somewhat rounded. However, without more the court finds this argument unpersuasive. Defendants have not produced an affidavit from Dr. Wynn indicating that he conclusively determined that Johnson's injury occurred sometime prior to the date in question. Additionally, there is no indication in Johnson's medical records that he complained of any pain or injury to his leg prior to February 13, 2002. And, as defendants concede that Johnson began complain of severe pain in his leg on the morning of February 13, 2002, and did in fact need emergency, hip replacement surgery immediately following his release from the Jail that afternoon, it appears that there is some evidence to support his contention that the injury occurred that morning.

There is no question that Johnson suffered a severe injury to his left leg. However, if the court credits the defendants' version of events, this injury was not caused by correctional officers, but rather likely occurred during a seizure. However, if the court credits Johnson's version of the events transpiring on February 13, 2002, the correctional officers acted maliciously and sadistically for the purpose of causing him harm, by pushing and/or dragging him down the stairs. Given this, I find that Johnson has satisfied both the objective and subjective elements of

7

an excessive force claim and that a genuine issue of material fact exists as to whether or not Johnson was subject to excessive force on the morning of February 13, 2002. Accordingly, I will deny defendants Alger and Dusing's motion for summary judgment as to this claim.

## B.

Johnson also alleges that Defendant Jones was deliberately indifferent to his need for medical attention following his release from the Jail on February 13, 2002. Jones contends that because she was unaware of the alleged assault, she had no reason to know Johnson needed medical attention and thus, cannot be held liable for failing to call an ambulance.

In order to state a cognizable claim for denial of medical care under the Eighth Amendment, a plaintiff must allege facts sufficient to demonstrate a deliberate indifference to a serious medical need. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To establish deliberate indifference, a plaintiff must present facts to evince that the defendant had actual knowledge of and disregard for an objectively serious medical need. Farmer v. Brennan, 511 U.S. 825 (1994); see also, Rish v. Johnson, 131 F.2d 1092, 1096 (4th Cir. 1997). "'A serious medical need' is 'one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" Shelton v. Angelone, 183 F.Supp.2d 830, 840 (W.D.Va. 2002) (quoting Cox v. District of Columbia, 834 F.Supp. 439, 441 (D.D.C. 1992).

Johnson specifically alleges that on February 13, 2002, after his release, he left the jail crawling and dragging his leg behind him. He further alleges that he specifically asked Jones to call for emergency medical assistance, however, she refused to make such a call. Jones fails to address Johnson's allegation that he left the institution crawling, dragging his leg, and requesting

emergency medical care. Rather, she claims that as she was unaware of the alleged assault she had no way to know he was injured and needed medical care. Jones further asserts that regardless of her failure to help Johnson, jail medical personnel had already determined Johnson had a mere muscle strain which did not need any further medical treatment. However, Jones does not contend that she reviewed Johnson's medical record nor that she even consulted the medical department, which admittedly is right across from the booking desk, before ignoring Johnson's request for help. Accordingly, I find that a genuine issue of material fact exists as to if Jones was deliberately indifferent to Johnson's need for medical care following his release from jail on February 13, 2002. Therefore, I will deny Jones motion for summary judgment as to this claim.

### III.

Based on the forgoing, I find that Johnson has presented issues of material fact as to his claims of excessive force against Alger and Dusing and deliberate indifference against Jones. Accordingly, defendants' motion for summary judgment is denied.

The Clerk is directed to send certified copies of this memorandum opinion and accompanying order to plaintiff and to counsel of record for the defendants, if known.

ENTER: This 3rd day of January, 2006.

Senior United States District Judge

9